SCHOOL COMMITTEE OF BURLINGTON *vs.* BURLINGTON
EDUCATORS ASSOCIATION.[1]

Middlesex.    January 9, 1979. — February 14, 1979.

Present: GRANT, BROWN, & PERRETTA, JJ.

*Arbitration,* Enjoining arbitration. *School and School Committee. Labor. Contract,* Collective bargaining contract.

The question of the number of days that schools were to be open was one of educational policy which could not lawfully be delegated to

---

[1] The only defendant named in the bill in equity (complaint) is one Samuel Gualtieri, who was described in the complaint as an officer of the Burlington Educators Association (association), an unincorporated association which was the recognized bargaining representative of the classroom teachers employed by the town of Burlington. We treat the case as if the association itself had been named as the defendant. See *Labor Relations Commn.* v. *Boston Teachers Union, Local 66,* 374 Mass. 79, 92-96 (1977).

an arbitrator, and, therefore, a school committee could not lawfully be required to negotiate with a teachers' union over that question. [45-47]

A judge did not err in staying arbitration of a teachers' union demand that the teachers be paid their full scheduled salaries without regard to the fact that they were on strike during a portion of the school year since it would be against public policy for a school committee to compensate the teachers for the days they participated in an illegal strike. [47-48]

Where members of a teachers' union had their pay docked for the number of school days they were out on strike, they were entitled to arbitration of a claim for compensation based on their having been required to work on school days which the school committee had added by postponing the scheduled closing date. [48-49]

In an action to stay the arbitration of grievances advanced by a teachers' union, there was sufficient evidence to warrant findings that the teachers were on strike on two days on which the schools were closed pursuant to a temporary restraining order and, therefore, that they were not entitled to arbitration of their demand to be paid for the two-day period. [49-51]

BILL IN EQUITY filed in the Superior Court on April 25, 1973.

The case was heard by *Lappin*, J.

*Brian A. Riley* for the defendant.

*David Berman*, Town Counsel, for the plaintiff.

GRANT, J. This is an application brought by the school committee of the town of Burlington (committee) under the provisions of G. L. c. 150C, § 2(*b*), to stay the arbitration of two grievances advanced by the Burlington Educators Association (association) under the arbitration provisions of the collective bargaining agreement between the parties which covered the period from September 1, 1972, through July 1, 1974. The case was heard and determined by a judge of the Superior Court on the association's motion for summary judgment. The judge denied the motion and, acting under the provisions of the last sentence of Mass. R. Civ. P. 56(c), 365 Mass. 824 (1974), entered judgment staying both arbitrations. The association has appealed. See *School Comm. of Agawam* v. *Agawam Educ. Assn.*, 371 Mass. 845, 846 (1977).

The following undisputed facts may be gleaned from admissions in the pleadings and from the opposing affidavits on which the motion was heard and determined. The teachers employed in the Burlington school system commenced the school year 1972-1973 without a collective bargaining agreement. On September 19, 1972, a majority of the members of the association voted to go on strike to enforce their contract demands. The strike commenced on September 20, which was a scheduled school day. On September 29, which was the eighth scheduled school day following the commencement of the strike, a judge of the Superior Court, acting at the behest of a group of parents of children enrolled in the school system, issued a temporary restraining order which required the committee to close the schools for the duration of the strike. The schools were closed on October 2 and 3. The restraining order was dissolved on the latter date, which was the tenth scheduled school day following the commencement of the strike. On the same day the association and the committee entered into a collective bargaining agreement which, by its terms, was retroactive to September 1 and (subject to an exception not here material) was to run through July 1, 1974. The teachers returned to work on October 4.

The agreement contained a salary schedule which expressed all the various teachers' salaries on an annual basis. Article III B ("Work Year") provided (with an exception not here material) that "[f]or the duration of this contract, the work year of teachers covered by the salary schedule . . . shall be no more than . . . one hundred and eighty-five (185) [work days] . . . and not more than one hundred eighty-two (182) student school days." Article VII F provided that in calculating deductions from salaries for unauthorized absences "one (1) day will be considered 1/185 of the annual contract amount." A supplement, entitled "Problems Resulting from the Strike," forbade certain kinds of disciplinary reprisals against teachers who had participated in the strike and con-

tained the following: "4. All questions concerning the number of days a Burlington School should be open henceforward in 1972/73 in order to provide a satisfactory educational program shall be submitted to the State Board of Education. All parties shall abide by the Board's determination."[2] Article II of the agreement established a four-step grievance procedure, culminating in binding arbitration to be conducted under the auspices of the American Arbitration Association (AAA).[3]

In January of 1973 the committee docked the pay of each teacher who had participated in the strike an amount equal to 10/185ths of his annual rate of pay. At some point (the actual sequence of events is not clear from the record) the committee requested the State Board of Education (Board) to "waive" ten of the school days required by the regulations referred to in note 2 hereof. On April 27, 1973, the Board denied the committee's request but granted an exemption of five school days with

---

[2] The reference here was to regulations promulgated by the State Board of Education under what now appear as the tenth and eighteenth paragraphs of G. L. c. 15, § 1G, as amended through St. 1978, c. 151, and under which the Board required every school committee to "schedule not less than 185 days in the school calendar" and that "[t]he school year shall contain not less than 180 days of school during which both pupils and teachers shall be present and engaged in regular teacher-learning activities. Failure of a school committee to comply with the regulations or to obtain a specific exemption therefrom can result in a loss of a portion of the State and Federal aid to which the committee would otherwise be entitled. See G. L. c. 71, §§ 1, 4, and 4A.

[3] A "grievance" was defined as "a claim based on an event or condition which involves the interpretation, meaning or application of this Agreement or any amendment or supplement thereto." Article I ("Recognition") C provided: "Except as specifically abridged, delegated, granted or modified ... by Section 178[?] of Chapter 149 of the General Laws of Massachusetts, all of the rights, powers and authority held by the School Committee prior to the effective date of said Agreement are retained by the School Committee and the exercise of said rights, powers and/or authority shall not be subject to the grievance procedure and/or arbitration." The intended reference may have been to G. L. c. 149, § 178I, as in effect prior to St. 1973, c. 1078, § 1.

respect to the school year 1972-1973. The record contains a memorandum from the superintendent of schools dated April 26, 1973, which advised the teachers that the committee had decided to hold 175 days of classes in the high and junior high schools and 180 days of classes in the elementary school. The memorandum advised that the teachers in the elementary school who had participated in the eighth day of the strike would not be paid for either of the two succeeding days on which the schools had been closed pursuant to the temporary restraining order. The record is silent on the question whether any of the striking teachers was paid for working on any of the days which the committee may have tacked onto the originally scheduled school closing dates.

Sometime following the action of the committee in docking each striking teacher the equivalent of ten days' pay (again the actual sequence of events is not clear from the record) the association processed two separate grievance claims through the grievance procedure to the point of filing written demands for arbitration with the AAA. The committee countered by filing the present application to stay both arbitrations.

We now proceed to a consideration of the two demands for arbitration, having in mind the rule that the provisions of G. L. c. 150C, § 2(*b*)(2), authorize a judge of the Superior Court to stay a proposed arbitration if it is clear that an award which the arbitrator is requested to make would impinge directly on some power or duty which a school committee cannot lawfully delegate to an arbitrator. See *Berkshire Hills Regional Sch. Dist. Comm.* v. *Gray*, 5 Mass. App. Ct. 686, 688-691 (1977), *S.C.*, 375 Mass. 522, 525-528 (1978). Contrast *School Comm. of Danvers* v. *Tyman*, 372 Mass. 106, 111-115 (1977).

1. The first grievance complains of the committee's holding back ten days' salary from each teacher following what the association euphemistically characterizes as a "ten (10) day work stoppage because of a breakdown in communication with the Burlington School Committee."

The ten-day period is specifically identified as the one "[f]rom September 20, 1972 to October 3, 1972." The "Remedy Sought" is stated in the following language: "1. The Association seeks a decision which would allow teachers to *work their guaranteed* 183 [sic] *to* 186 *days this year* per Article III.B. 2. The Association seeks a decision which would allow each teacher to *obtain his guaranteed annual salary* as specified in [the aforementioned salary schedule]. 3. The Association seeks a decision which would mandate that the School Committee and Association *negotiate a rescheduling of a sufficient number of days* to accomodate the first two remedies" (emphasis supplied).

We construe the first request above as calling for the arbitrator to determine the number of days which the striking teachers should be permitted to work during the 1972-1973 school year. The power to determine the number of days that the schools shall be open in any school year is specifically reserved to a school committee by the second sentence of G. L. c. 71, § 37.[4] Compare *Berkshire Hills Regional Sch. Dist. Comm.* v. *Berkshire Hills Educ. Assn.*, 375 Mass. 522, 527 (1978). It has been repeatedly held that matters of educational policy which are committed or reserved to a school committee by § 37 cannot be lawfully delegated to an arbitrator for decision by him. In addition to the *Berkshire Hills* case, see *School Comm. of Hanover* v. *Curry*, 3 Mass. App. Ct. 151, 155-158 (1975), S.C., 369 Mass. 683, 685 (1976), and *School Comm. of Braintree* v. *Raymond*, 369 Mass. 686, 689-690 (1976).

The quality of education can be rendered meaningless if the quantity is subject to manipulation. It would seem

---

[4] The material portions of § 37 are as follows: "[The school committee] shall have general charge of all the public schools ... It may determine, subject to this chapter, the number of weeks and the hours during which such schools shall be in session, and may make regulations as to attendance therein." The words "subject to this chapter" refer to the provisions of G. L. c. 71, §§ 1, 4, and 4A, which have already been adverted to in note 2, *supra*.

that the association acceded to this proposition when it expressly agreed to abide by the Board's determination of "the number of days [the schools] should be open ... in order to provide a satisfactory educational program." We conclude that the question of the number of days the schools are to be open is one of educational policy which cannot lawfully be delegated to an arbitrator.[5] It follows from this conclusion that the committee could not lawfully be required to negotiate with the association over the same question, with the result that the third request of this particular demand for arbitration also falls.[6]

The second request of this demand appears to be susceptible to two different interpretations.[7] One is that the teachers are seeking payment of their full scheduled salaries without regard to the fact that they were on strike during a portion of the complete work year with reference to which those salaries were determined. Strikes by public employees have always been illegal under our law. See *Director of the Div. of Employee Relations of the Dept. of Admn. & Fin.* v. *Labor Relations Comm.*, 370 Mass. 162, 167-168 (1976); G. L. c. 149, §§ 178F(10), 178M and 178N, as in effect prior to St. 1973, c. 1078, § 1; G. L. c. 150E, §§ 1 ("Strike") and 9A(*a*), inserted by St. 1973, c. 1078, § 2. A necessary corollary of that proposition is that it would be unlawful because against public policy (see *School Comm. of Hanover* v. *Curry*, 369 Mass. at 685; *Watertown Firefighters, Local 1347* v. *Watertown*, 376 Mass. 706, 715-716 [1978]) for the committee to compensate the teachers for the scheduled school days they were on strike. See and compare *Board of Educ. of Community*

---

[5] If there is anything to the contrary in *Koch* v. *Bellefonte Area Sch. Dist.*, 36 Pa. Commw. Ct. 438 (1978), we decline to follow it.

[6] We pass the question whether an order by an arbitrator that the parties must negotiate would have been contrary to public policy as expressed in the provisions of G. L. c. 149, §§ 178G-178N, as in effect prior to St. 1973, c. 1078, § 1.

[7] If other interpretations are possible, they have not been brought to our attention by counsel.

*High Sch. Dist. No. 218* v. *Falk,* 8 Ill. App. 3d 696, 699 (1972); *Board of Educ. of Marshallton-McKean Sch. Dist.* v. *Sinclair,* 373 A.2d 572, 574-575 (Del. 1977). See also *Attorney Gen.* v. *Special Sch. Dist. No. 1,* 288 Minn. 496, 511 (1970), cert. denied sub nom. *Minneapolis Fedn. of Teachers, Local 59* v. *Spannaus,* 404 U.S. 886 (1971), overruled on other grounds, *Nyhus* v. *Civil Serv. Bd.,* 305 Minn. 184, 186 (1975).[8] If it would be unlawful for the committee to pay such compensation, it would be unlawful for an arbitrator to order such payment. Compare *Marlborough* v. *Cybulski, Ohnemus & Associates, Inc.,* 370 Mass. 157, 159-161 (1976). Accordingly, if this interpretation of the second request of this demand is the correct one, the judge did not err in staying arbitration. See *School Comm. of Danvers* v. *Tyman,* 372 Mass. at 113.

The other possible interpretation, one that might be adopted by an arbitrator pursuant to his power to identify and define grievances (see *Wachusett Regional Dist. Sch. Comm.* v. *Wachusett Regional Teachers Assn.,* 6 Mass. App. Ct. 851, 851 [1978]), is that the association is seeking a decision that the striking teachers are entitled to be paid for working on any days which the committee might tack onto the originally scheduled school closing dates in response to the Board's determination of the minimum number of school days which would be required in the circumstances (see note 2, *supra*). We have already noted that the record contains a suggestion that such days may have been tacked on but is silent as to whether the committee paid the teachers for work performed on such days.

---

[8] We reach this conclusion without reliance on the provisions now found in the third paragraph of G. L. c. 150E, § 15, inserted by St. 1973, c. 1078, § 2, which, by reason of the provisions of St. 1973, c. 1078, §§ 5 and 7, have no application to the circumstances of the present case. That paragraph reads: "No compensation shall be paid by [a public] employer to [a public] employee with respect to any day or part thereof when such employee is engaged in a strike against said employer, nor shall such employee be eligible to recover such compensation at a later date in the event that such employee is required to work additional days to fulfill the provisions of collective bargaining agreement."

We think it clear that the provisions of G. L. c. 150E, § 15 (note 8, *supra*), would bar any claim of that nature which might be advanced under a collective bargaining agreement executed on or after July 1, 1974. The agreement in the present case was entered into prior to and expired on that date. The only cases we have found in which there has been occasion to consider such a claim for compensation in the absence of a statutory provision of the type found in § 15 have concluded that payment of such a claim is not contrary to public policy. See *Pittenger* v. *Union Area Sch. Bd.*, 24 Pa. Commw. Ct. 442, 447 (1976); *Commonwealth* v. *Mifflin County Sch. Bd.*, 30 Pa. Commw. Ct. 213, 218 n.3 (1977). The reasoning of those cases is that if the teachers' pay has already been docked for the number of school days they were out on strike, there is no overriding objection to paying the teachers for the rescheduled days on which they actually work in the manner contemplated by the original agreement. In short, the public ultimately gets its money's worth.

We concur in the reasoning and result of those cases and find no obstacle to the arbitrability of any claim for compensation in this case which might be based on the teachers' having been required to work on any school days which the committee may have tacked onto the originally scheduled school closing dates.

2. The second grievance advanced by the association is specifically directed to the committee's action in docking the striking teachers' pay for the two days the schools were closed pursuant to the temporary restraining order. The "Remedy Sought" is far from clear, and once again there appear to be two possible interpretations. One is that the association sought to have the arbitrator order the committee to reschedule the two days in the remaining school year. If this is the correct interpretation, then the arbitration was properly stayed because the association was seeking to have the arbitrator exercise what we have already determined to be the committee's nondelegable power to determine the number of days the schools would be open.

The other interpretation, one which is suggested by the association's answer to the complaint and by certain of its answers to the committee's notice to admit facts, is that the teachers should be paid for those two days (October 2 and 3, 1972) because they were not on strike on either day but were the unwilling victims of a court-ordered lockout. Whether the teachers were on strike on those days is a question of fact. The problem confronting the judge who heard the motion for summary judgment was that of determining from the papers before him whether there was a genuine question of fact as to the teachers' status on those days.

As already noted, the association's first statement of grievance characterized the entire ten-day period "[f]rom September 20, 1972 to October 3, 1972" as a "work stoppage because of a breakdown in communication with the Burlington School Committee." The association's answer to the complaint admits that the association took a strike vote on September 19 and is explicit on the point that "no vote was taken to end the strike" before the teachers returned to work on October 4, which was the day after the collective bargaining agreement was signed. The same chronology is emphasized in the affidavit relied on by the association in support of its motion for summary judgment. There is no contradiction of the assertion in the affidavit of the superintendent of schools that the committee was restrained from holding school "while the strike continued."[9] Nor is there any contradiction of the assertion in the same affidavit that the "strike continued until October 4, 1972."

We think the judge properly concluded that there was no genuine dispute as to whether the teachers were on strike on the two days (October 2 and 3) which were the subject of the association's second demand for arbitration. If this interpretation of that demand is the correct one, the judge properly stayed the arbitration for the

---

[9] The record does not contain a copy of the restraining order.

reason, already explained, that the teachers could not lawfully be paid for those days.

The case is remanded to the Superior Court for a summary determination of the question whether there is a "controversy" (G. L. c. 150C, § 2[*b*][2]) as to pay for teachers working on days which may have been tacked onto the regularly scheduled school closing dates. If the court determines that there is such a controversy, the present judgment is to be modified so as to require the committee to arbitrate that controversy. Compare *School Comm. of Southbridge* v. *Brown*, 375 Mass. 502, 506 (1978). If the court determines that there is no such controversy, the present judgment is to stand. Costs of appeal are not to be awarded to any party.

*So ordered.*