Banks, J.
This is a matter in contract arising from the lease of certain premises owned by the defendant in Harwichport, Barnstable County on Cape Cod. On April 24, 1982, the plaintiff executed a lease for the rental of that property, a year-round home, for the period commencing July 31,1982 and ending September 11,1982. The lease was negotiated through a broker, Barnes Cape Cod Realty of Harwichport, and was forwarded to, and duly signed by, the defendant who resided in the state of Virginia. The plaintiff seeks to recover rent paid and statutory damages pursuant to G.L. c. 93A and c. 186, §14.
The subject property has been owned by the defendant since September, 1962. During the defendant’s first two years of ownership, he and his family. occupied the property as their primary residence during the summer months and occasionally resided there in the winter. The defendant used the subject property for approximately one-half of the following two summer seasons and rented the propertyfor the remainder thereof. From 1965 through 1973, the defendant utilized the property as his family’s principal place of residence in the United States while he worked overseas as an employee of the United States Department of Commerce. From September, 1973 through September, 1975, the defendant and his family continued to occupy the Cape Cod house as their principal residence. From 1976 through 1983, the property was rented during the summer months.
At various times during the defendant’s ownership of the subject property, Barnes Cape Cod Realty leased the premises to others on his behalf for all or part of the summer season. Barnes in fact served as the defendant’s “exclusive agent” for the lease and handling of this property.
During the summer in question, the defendant occupied the premises for his own use during the first two weeks of June, and then leased the house to a third partyfor the six week period between June 15to July 30,1982. Plaintiff Yegian thereafter leased the premises for the six week period from July 31 to September 11,1982. The plaintiffs lease was negotiated by Barnes Realty. The plaintiff paid half of the rental amount in advance and the balance upon his 1 arrival to take possesson of the premises. The total rent agreed-upon and paid for the six week period was $2,750.00.
The controversy which forms the basis of this action arose from the *157 observation made by the plaintiff and his wife of mouse droppings on the counter and in other parts of the kitchen on the first day of the Yegians’ occupancy under the lease. The plaintiffs promptly notified Barnes Realty and were assured that if further problems of this nature were encountered, they would arrange for extermination. The plaintiff testified that he and his wife next saw a mouse in the kitchen on Saturday, August 7, 1982. The plaintiff notified Barnes Realty and returned to his home in Lexington, Massachusetts while the house was being exterminated through the use of chemical agents and baited traps. A week later the plaintiffs returned to the premises after being assured by Barnes Realty that a professional exterminator had worked at the house. Upon their return to the house on August 14, 1982, however, the plaintiffs reported that they again saw a mouse, whereupon they immediately left the premises. The plaintiffs returned the keys to the property to Barnes Realty on August 19, 1982 and requested a termination of their lease.
No portion of the rental amount was ever returned to the plaintiff who thereafter commenced the instant suit claiming a breach of the lease by the defendant by virtue of the presence of mice on the premises. In count 2 of his complaint, the plaintiff alleged that the letting of the premises under such circumstances constituted an unfair and deceptive act in violation of G. L. c. 93A. The plaintiff also asserted that the presence of the mouse or mice violated provisions of G. L. c. 186, §14 pertaining to an implied warranty of habitability of leased premises thereby entitling the plaintiff to the monetary sanctions provided by that statute. The parties’ lease also contained an express warranty of habitability. The defendant brought a counterclaim for breach of contract, and also filed a Dist./Mun. Cts. R. Civ. P. Rule, 56 motion for partial summaryjudgment on the plaintiffs c. 93A claim. The trial court allowed defendant’s summaryjudgment motion on count two, and found for the plaintiff after hearing in the amount of $458.50 under count one for breach of contract.
The plaintiff now claims to be aggrieved by the court’s allowance of the following two rulings requested by the defendant:
“3. As a matter of law, the plaintiff is not entitled to recover under any theory pursuant to G.L.c. 93A, § 1 et seq.
“4. G. L. c. 186, § 14 does not apply to the circumstances ofthis case.”
These rulings, taken together with the allowance of the defendant’s Rule 56 motion for summaryjudgment, raise questions as to whether the applicable law has been properly applied in this matter.
The trial court’s rulings on defendant’s request numbers 3 and 4 and on defendant’s Rule 56 motion for summaryjudgment constitute a finding that neither G. L. c. 186, §14, nor G. L. c. 93A, were applicable to this case as a matter of law. We find that this determination was improperly overbroad and hereby vacate the court’s judgment in its entirety.
General Laws c. 93A, §2(a) declares unlawful any “unfair or deceptive acts or practices in the conduct of any trade or commerce. ...” A threshold determination to be made by any trial court in its consideration of a suit predicated on the consumer protection provisions of c. 93A, § 9 is whether the defendant is in the trade or business of pursuing the practice from which the alleged unfairness or deception is deemed to flow. This essential categorization of the defendant as one engaged in “trade or commerce” derives from the fundamental purpose of G. L. c. 93A which is to extend protection to the uninitiated consumer who deals in a business context with individuals more knowledgeable and skilled in the complexities, and perhaps wiles, of a *158 particular market situation. The basic policy of c. 93A is “to regulate business activities toward the end of providing proper disclosure of information and a more equitable balance in the relationship of consumers to persons conducting business activities.” Commonwealth v. DeCotis, 366 Mass. 234, 238 (1974). See also McGrath v. Mishara, 386 Mass. 74, 85 (1982); Lowell Gas v. Attorney General, 377 Mass. 37, 51 (1979).
A resolution of the preliminary “trade or commerce” question in every c. 93A case thus becomes one of determining if one party enjoys such a marked advantage over the other that any inequity or unfair dealing in the bargaining result is to be dealt with punitively. It may be stated as a general proposition that a person who sells or leases real property may be considered engaged in “trade or commerce.” See, e.g., Linthicum v. Archambault, 379 Mass. 381, 387 (1979). It is also clear, however, that the consumer protection statute does not apply to transactions involving equally expert or inexpert negotiators. In Lantner v. Carson, 374 Mass. 606 (1978), which involved a single sale of a house by private individuals, the Supreme Judicial Court ruled that G. L. c. 93A does not pertain to transactions which are strictly private in nature and not undertaken in a business context.
Succeeding cases have established that the determination of a defendant’s status as one engaged in “trade or commerce” and thus subject to the sanctions of c. 93A, §9, requires consideration of a range of factors. These include:
the nature of the transaction,-the character of the parties involved ... the activities engaged in by the parties .... whether similar transactions have been undertaken in the past; whether the transaction is motivated by business or personal reasons; and whether the participant played an active role in the transaction.
Begelfer v. Najarian, 381 Mass. 177, 191 (1980). See also, Nei v. Burley, 388 Mass. 307, 317 (1983); Lynn v. Nashawaty, 12 Mass. App. Ct. 310, 314 (1981). The characterization of any given transaction as one undertaken in a “business context” which subjects the principals to the penalties of G. L. c. 93A, § 9 can be made solely on a case by case basis. In the absense of a “bright line” test, this issue and the consequent applicability of c. 93A will ordinarily remain questions of fact for the trial court not readily resolved in a summary manner pursuant to Dist./Mun. Cts. R. Civ. P., Rule 56.
In reviewing the trial court’s ruling on G. L. c. 186, §14, it is sufficient to employ the familiar canon of construction that the language of a statute is to be interpreted as written, according to the usual and natural meaning of the terms employed. See, e.g., Boston Teachers Union, Local 66 v. Boston, 382 Mass. 553 (1981); Commonwealth v. Brooks, 366 Mass. 423, 427-428 (1974). General Laws c. 186, §14 unambiguously states, in relevant part, that “any lessor or landlord who directly or indirectly interferes with the quiet enjoyment of any residential premises by the occupant.... [emphasis supplied]” shall be subject to the criminal and civil penalties imposed by the statute. Construing the statute as an integrated whole, the term “residential premises” may be deemed synonymous with the phrase “any building or part thereof occupied for dwelling purposes” contained in thé first segment of the statute. The Cape Cod premises leased to the defendant herein clearly constituted a dwelling within the § 14 broad meaning of that term. Further, the express property exclusions set forth in the statute do not include summer rentals, beach or vacation properties. Accordingly, no statutory basis exists for any ruling of law that G. L. c. 186, § 14 is wholly inapplicable to the case sub judice.
The issues to be addressed in this case on remand necessarily rest within the *159 fact-finding province of the trial court. Consideration must be given to whether the defendant engaged in “trade or commerce” in leasing his Cape Cod property; and, if so, whether sufficient evidence is advanced of rodent infestation to render such business activity an “unfair and deceptive” act cognizable under G. L. c. 93A. See Wohfberg v. Hunter, 385 Mass. 390 (1982). Whether such alleged rodent infestation rendered the premises uninhabitable, and “seriously” impaired or interfered with the plaintiffs rights so as to constitute an actionable breach of quiet enjoyment must also be addressed in reference to the plaintiffs claim for G. L. c. 186, §14 damages. See, generally, Leardi v. Brown, 394 Mass. 151, 167 (1985); Lowery v. Robinson, 13 Mass. App. Ct. 982, 982-983 (1982). Given the existence of these and other material issues of fact, a trial on the merits is in order.
Judgment is hereby vacated. This case is remanded for a new trial.