[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by the City of Waterbury ("the city") from a January 24, 2001 final decision of the State Board of Labor Relations ("the board") holding that a valid collective bargaining agreement had been reached and approved between the city and the defendant Waterbury Police Union, Local 1237, Council 15, AFSCME, AFL-CIO ("the union"). The appeal is authorized by General Statutes §§ 7-471(5), 31-109(d) and 4-183, of the Uniform Administrative Procedure Act ("UAPA").
On October 6, 2000, the union filed with the board a complaint, which was amended on November 1, 2000, alleging that the city was violating General Statutes §§ 7-471(a)(1) and 7-471(a)(4) of the Municipal Employee Relations Act ("MERA") by refusing to implement a valid collective bargaining agreement that had been approved in accordance with § 7-474(b) of MERA. (Return of Record ("ROR"), Items 1, 5.) The case proceeded to a hearing on December 4, 2000. On January 24, 2001 the board issued its decision, making the following findings of fact:
 1. The City is a municipal employer within the meaning of [MERA].
 2. The Union is an employee organization within the meaning of [MERA].
* * *
 4. The City and the Union are parties to a collective bargaining agreement which expired June 30, 2000.
. . .
 5. The parties commenced negotiations for a successor agreement on April 3, 2000. There were no ground rules throughout the proceedings. At the time the negotiations commenced and throughout the negotiation process, the City was at least 8 million dollars in debt.
CT Page 14623
 6. In accord with Section 7-474(a) of the Act, the City was represented by Mayor Philip Giordano, through his Chief of Staff, Ms. Catherine Awwad, during collective bargaining. Ms. Awwad had the authority to negotiate on behalf of the City and to bind the City to an agreement. Mayor Giordano was involved in approximately 90% of the negotiations up until the last month and a half before a tentative agreement was signed on August 17, 2000. During negotiations, the Union was represented by Union President Paul Ariola.
 7. During the course of negotiations the parties reached a tentative agreement on individual contract provisions. . . . The tentative agreement was not conditioned upon any factors. The tentative agreement was not subject to the results of any actuarial studies.
 8. On or about August 17, 2000, the Union and the City through the Mayor's Chief of Staff executed a Letter of Understanding confirming a tentative agreement on a successor collective bargaining agreement. . . . The Letter of Understanding contained the following statement: "It is also agreed that in the event that either party does not ratify the tentative agreement, any further negotiations/arbitration shall be limited to the issues found in the tentative agreement."
 9. The Sick Leave Article of said tentative agreement provides that employees may exchange up to one hundred twenty (120) days of accumulated sick leave for no more than three (3) years of service for pension purposes.
 10. On August 18, 2000, an actuarial study of the proposed changes [i.e. the exchange of sick leave for pension benefits] in the police contract was issued to said Union. . . .
 11. The agreement was ratified by the Union membership on August 24, 2000.
 12. On September 8, 2000 an actuarial study of the proposed changes . . . was issued to the City. . . . [by its own firm].
CT Page 14624
 13. The Board of Aldermen is the legislative body of the City. . . .
 14. On September 21 2000 the proposed . . . contract was presented to the . . . Board of Finance.
 15. The . . . Board of Finance voted to approve the tentative . . . agreement on September 21, 2000.
 16. On September 22, 2000, the Board of Finance confirmed to the Board of Aldermen their approval of the tentative . . . agreement . . .
 17. On September 25, 2000, the proposed . . . contract was presented to the . . . Board of Aldermen for approval in accord with the provisions of Section 7-474
(b) of the Act. The Mayor did not address the Board of Aldermen prior to their vote on the agreement although he was aware of the results of the actuarial study commissioned by the City at the time the contract was presented to the Board of Aldermen.
 18. On September 25, 2000, the Board of Aldermen voted to approve the agreement between the City and the Union. . . .
 19. On September 25, 2000, the City Clerk issued a summary report reflecting the Board of Aldermen's vote. . . .
 20. Section 339 of the City Charter . . . provides in relevant part: "Each vote, resolution, order, by-law or ordinance . . . which passes said board shall be transmitted forthwith to the mayor. . . . If he shall disapprove it, he shall, within ten (10) days, return it to the city clerk, with his objections in writing, and the clerk shall present the same to the board of aldermen at its next meeting:
 On October 4, 2000, the Mayor sent a memo to the Union stating that [he] had exercised the veto power of the office of Mayor. . . . The Mayor marked the summary report reflecting the Board of Aldermen's vote as "Veto" 10-4-00 Philip Giordano, Mayor. . . .
CT Page 14625
 21. On October 10, 2000 the Board of Aldermen voted not "to override Mayor Philip A. Giordano's veto of the 2000-2005 Agreement between the City of Waterbury and the Waterbury Police Union"
 22. As a result of the Mayor's veto action, the City has refused to implement the agreement.
(ROR, Item 9, pp. 2-4.)
Based upon these findings of fact, the board rejected the city's argument that the mayor was authorized under the city charter to veto the board of aldermen's vote to approve the collective bargaining agreement. It ordered the city to cease and desist from failing to execute and implement the agreement and to put it into effect immediately. (ROR, Item 9, p. 7.) This appeal followed.[1]
The city raised four issues in this administrative appeal: (1) The board erred in concluding that MERA and the city charter did not allow the mayor to veto the vote of the Board of Aldermen; (2) the board erred in finding that the collective bargaining agreement was not contingent on the actuarial studies of the pension changes; (3) the board erred as a matter of law in concluding that the city's alleged failure to implement a collective bargaining agreement was a prohibited practice under MERA; and (4) the board erred in not recognizing that the veto was necessary due to the city's financial condition.
The city has raised issues both of law and fact. The standard to review these claims has been set forth recently in MacDermid, Inc. v. Dept. ofEnvironmental Protection, 257 Conn. 128 (2001): "Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act [General Statutes § 4-166 et seq. (UAPA)] . . . and the scope of that review is very restricted. With regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . ." (Citations omitted; internal quotation marks omitted.) Id., 136. "The substantial evidence rule governs judicial review of administrative fact-finding under UAPA. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. . . . The burden is on the [plaintiff] to demonstrate that the [agency's] factual conclusions were not supported by the weight of substantial evidence on the whole record. . . ." (Citations omitted; internal quotation marks omitted.) Id., 136-137. "Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, CT Page 14626 illegally, or in abuse of its discretion. . . ." (Internal quotation marks omitted.) Id., 137; see also Connecticut Building Wrecking Co. v.Carothers, 218 Conn. 580, 593 (1991) (under substantial evidence test, the court must defer to agency's assessment of the credibility of witnesses and its right to believe or disbelieve any witness in whole or in part); Lieberman v. State Board of Labor Relations, 216 Conn. 253, 263
(1990) ("we ordinarily give great deference to the construction given a statute by the agency charged with its enforcement.")
The first issue raised by the city is that of the permissibility of the mayor's veto. In this regard, it should be understood that "[t]he fixing of compensation for public employees is a legislative function." AlamedaCounty Employees' Assn. v. County of Alameda, 106 Cal.Rptr. 441, 449
(Cal.App. 1st Dist. 1973); Carofano v. Bridgeport, 196 Conn. 623, 632
(1985).
MERA was enacted by our General Assembly taking this principle into account. Section 7-474 sets forth the following steps for approving and implementing a duly negotiated collective bargaining agreement: (1) Once negotiations have culminated in an agreement, the agreement must be reduced to writing, § 7-474(b); (2) if funds are necessary for implementation of the agreement or the agreement conflicts with any charter, special act, ordinance, rule or regulation, the chief executive officer must submit the agreement to the legislative body for approval within fourteen days of reaching agreement, § 7-474(b); and (3) if the agreement is approved by the legislative body, the chief executive officer must sign the agreement as a "ministerial" act, § 7-474(e). As long as the request for funds has been presented to and approved by the legislative body, the municipality is required to fund the agreement. General Statutes § 7-474(c).
The city contends that, according to § 7-474(e), to be "valid and in force," the agreement must be signed by the chief executive officer, and here the mayor has vetoed the agreement. Section 7-474(e), however, only requires the chief executive officer to sign the agreement as a "ministerial act." The case of Boston Teachers Union, Local 66 v.Boston, 416 N.E.2d 1363 (Mass. 1981) considers this very issue. There a statute provided that the mayor was required to submit a request to fund a public collective bargaining agreement to the city council, which might then accept or reject the request. After approval by the city council, the mayor vetoed an order of the city council appropriating money to fund the collective bargaining contract.
The Massachusetts Supreme Judicial Court held that the mayor did not have this veto power as it was inconsistent with the legislative purposes of the public collective bargaining statutes. Boston Teachers Union,CT Page 14627Local 66 v. Boston, supra, 416 N.E.2d 1371. A case decided the following year, characterized the role of the mayor after the approval by the city council as a "ministerial one." Boston Teachers Union, Local 66 v. SchoolCommittee of Boston, 434 N.E.2d 1258, 1266 (Mass. 1982). Following these cases, the court agrees with the board and the union that under MERA the mayor does not have the right to veto the vote of the Board of Aldermen. By defining his role as ministerial, MERA intended the mayor to take the non-discretionary act of signing the contract, but the contract, once approved by the Board of Aldermen, would have been valid and binding, even absent his signature. Lombard v. Edward J. Peters, Jr., P.C.,252 Conn. 623, 628 (2000).
Contrary to the city's contention, section 339 of the charter is not identical to or consistent with the mayor's authority under MERA. Section 339 provides that the mayor may disapprove the vote of the Board of Aldermen, stating his reasons therefor. The charter provision calls for an exercise of judgment and discretion. Section 339 is in conflict with MERA and the MERA's statutory provisions must prevail. See General Statutes § 7-474(e); Weidenbacher v. Duclos, 234 Conn. 51, 65
(1995).
The second issue raised by the city is that the board erred in concluding in finding of fact #7 that the tentative agreement was not contingent on the results of the actuarial studies. This is a matter of substantial evidence, where, as indicated, the court's role is "highly deferential" to the agency's conclusions. MacDermid, Inc. v. Dept. ofEnvironmental Protection, supra, 257 Conn. 137. There is substantial evidence to support this conclusion of the board. The tentative agreement was silent on any contingencies. The union president testified at the board's hearing that there were no contingencies, (ROR, Item 7, Transcript, p. 70), and even the mayor agreed that there were no qualifiers on the face of the document. (ROR, Item 7, Transcript, pp. 56-57.) That the tentative agreement was contingent on ratification by the parties does not mean that the actuarial studies were a contingency. Finally, both the union's and the city's studies were before the Board of Aldermen at the time that the vote to approve was taken. (See ROR, Item 7, Exhibit 10, p. 6, remarks of Alderman Caligiuri.)
The third issue raised by the city is that the failure to implement the agreement is not as a matter of law a prohibited practice under MERA, citing dicta from Groton v. State Board of Labor Relations, Superior Court, judicial district of New London at Norwich, Docket No. 104742 (March 12, 1997, Parker, J.). The board has held in its City of Stamford, Decision No. 874 (1969) that MERA does cover the situation where an employer fails to implement a collective bargaining agreement. As indicated in MacDermid, Inc. v. Dept. of Environmental Protection, CT Page 14628 supra, 257 Conn. 138, the court is to accord "great deference to the construction given [a] statute by the agency charged with its enforcement. . . ." (Citations omitted; internal quotation marks omitted.) Id.
The board's interpretation also follows generally recognized principles of labor law. Board of Education v. State Board of Labor Relations,217 Conn. 110, 122-23 (1991); Local 512, Warehouse Office Workers'Union v. National Labor Relations Board, 795 F.2d 705, 712 (9th Cir. 1986) ("An employer violates section 8(a)(5) [of the National Labor Relations Act] if he refuses to execute a collective bargaining agreement whose terms have been agreed by both parties.") The court thus concludes that the board does have the authority under MERA to find that the city's refusal to implement the tentative agreement on approval by the Board of Alderman was a prohibited practice.
The city is clearly in financial difficulties and raises this issue as the fourth reason to overturn the board's decision. The question of whether the City can now afford the contract is, however, a different question from whether the contract was valid and binding at the time funds were approved for it by the Board of Aldermen. The validity of the contract was the only matter addressed by the board.
Other than a brief reference to the city's financial status in terms of the outstanding pension debt, (ROR, Item 7, Transcript, p. 38), there was no evidence before the board of what subsequently became a fiscal crisis. Further the state oversight board of Special Acts 2001, No. 01-1
had not yet come into existence at the time of the board's hearing or its decision. The state oversight board now controls the city's budget. On the current record, is it inappropriate for this court to consider the city's defense that it is cannot satisfy the agreement. The city may continue to raise the issue in the board's compliance proceedings, from which a further right to appeal lies. New Haven v. New Haven Police UnionLocal 530, 210 Conn. 597 (1989).
The appeal is therefore dismissed.
Henry S. Cohn, Judge