SCHOOL COMMITTEE OF BOSTON & others[1] *vs.* CITY OF
BOSTON & others.[2]

Suffolk.    February 4, 1981. — June 4, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Education,* Special educational needs. *School and School Committee,*
Special educational needs. *Boston. Statute,* Construction, Super-
sedure. *Municipal Corporations,* Municipal finance.

This court found it appropriate to grant declaratory relief as to the respec-
tive rights and obligations of the Boston school committee and the city
of Boston concerning the funding of special needs programs in an ac-
tion brought pursuant to G. L. c. 71, § 34, c. 71B, § 5, and c. 231A
even though the action could not properly be maintained under either
c. 71, § 34, or c. 71B, § 5. [697]
Ten taxable inhabitants of the city of Boston were not entitled to bring an
action pursuant to G. L. c. 71, § 34, to compel the city to appropriate
funds in excess of the amount the school committee was authorized to
appropriate under St. 1936, c. 224; because of the unique financing
system for the Boston public schools provided in St. 1936, c. 224,
G. L. c. 71, § 34, has no application to the city of Boston. [698-699]
The city of Boston is not required by G. L. c. 71B, § 5, to provide fund-
ing for special needs programs in excess of the funds appropriated
under St. 1936, c. 224; if sufficient funds are not available to finance
all of the special education services considered desirable and the mayor
declines to submit to the city council a request for supplemental funds
for such programs, the school committee must allocate the existing
funds equitably. [700-706]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 10, 1980.

---

[1] The plaintiffs are ten taxable inhabitants of the city of Boston and four
of the five members of the school committee of Boston. The Massachu-
setts Advocacy Center has submitted a brief as amicus curiae.

[2] Other defendants are the mayor of the city of Boston, the collector-
treasurer of the city of Boston, and the auditor of the city of Boston.

The case was reported to the Appeals Court by *Morse,* J. The Supreme Judicial Court granted a request for direct review.

*Stephen H. Oleskey (Richard A. Johnston & Harold Carroll,* Corporation Counsel, with him) for the defendants.

*Marshall Simonds (Henry C. Dinger* with him) for the plaintiffs.

*Thomas A. Mela,* for Massachusetts Advocacy Center, amicus curiae, submitted a brief.

LIACOS, J. This case involves a dispute over the funding of programs for special education in the city of Boston. At issue is whether the city's obligation under G. L. c. 71B, § 5, to provide funding for special education is limited by the Boston public school financing scheme set forth in St. 1936, c. 224, as amended. The case was argued before the full court on February 4, 1981, and on February 12, 1981, we ordered entry of the following partial summary judgment: "The City of Boston and its financial officers are not required, under G. L. c. 71B, § 5, to provide funding for special needs programs in addition to the funds appropriated under St. 1936, c. 224, as amended. The obligation to provide and allocate funding for special needs programs is subject to the limitations on school funding for the City of Boston contained in St. 1936, c. 224, as amended." This opinion is in explanation of that order.

1. *Proceedings.* On October 10, 1980, the plaintiffs filed a complaint in the Superior Court seeking relief pursuant to G. L. c. 71, § 34; G. L. c. 71B, § 5; and G. L. c. 231A. The plaintiffs alleged that the defendants (city) had failed to appropriate for fiscal year 1981 the amounts necessary for the support of Boston's special education programs and sought an order requiring the city to appropriate $46,145,272 in supplemental funds, plus an additional 25% of this amount. G. L. c. 71, § 34. The plaintiffs also asked the court to declare that the city of Boston is required under the provisions of G. L. c. 71B, inserted by St. 1972, c. 766, to provide funding for special needs programs; that this obligation supersedes the St. 1936, c. 224, limitation on school com-

mittee appropriations in the city of Boston; that the mayor is required to submit requests for supplemental special education funds to the city council and may not veto such appropriations approved by the council; and that the council is required to make such appropriations.

The city filed an answer and a counterclaim in which it asked the court to enjoin the school committee from spending in excess of its St. 1936, c. 224, appropriation.[3] On November 7, 1980, the plaintiffs moved for partial summary judgment on their prayers for declaratory relief. The city then moved for summary judgment on the plaintiffs' claims and for partial summary judgment on its counterclaim.

On December 3, 1980, a Superior Court judge granted the plaintiffs' motion for partial summary judgment, declaring that the city was required under G. L. c. 71B, § 5, to provide funding for special needs programs in addition to the funds appropriated by the school committee under St. 1936, c. 224, but did not specify the amount to be provided. The trial judge reported the case to the Appeals Court pursuant to Mass. R. Civ. P. 64, 365 Mass. 831 (1974), and we allowed the city's assented to application for direct appellate review.

2. *Facts.* The parties submitted the case to the trial judge on a stipulation of facts, which we summarize. On April 29, 1980, the Boston school committee appropriated $195,220,920 as its St. 1936, c. 224, appropriation for fiscal 1981.[4] On or about July 18, 1980, the school committee

---

[3] The city also sought to compel an audit of the school committee's finances. Since the committee agreed to such an audit, the trial judge took no action on that portion of the counterclaim.

[4] The amount appropriated by the school committee was in accordance with the procedure prescribed by St. 1936, c. 224, § 2B, inserted by St. 1963, c. 786, § 3, which provides: "Before the first Monday in March in each year, the city auditor of the city of Boston shall determine: — (i) the amount of money estimated by the school committee to be given, and the income to be collected, for school purposes in such year, (ii) the total amount appropriated in the preceding year by the school committee under, or for the purposes of, clause (c) of section one from taxes, estimated income and unexpended balances, (iii) the amount appropri-

submitted its preliminary budget for fiscal year 1981 to the city. This preliminary budget totaled $227,697,844.[5] On August 29, 1980, the school committee voted to request supplemental appropriations of $40,700,000,[6] for a total general school purposes budget of $231,170,722.[7] Of the requested supplemental appropriations, $7,100,000 was earmarked for special needs programs.

Contrary to his practice in previous years,[8] the mayor refused to submit the requests for supplemental appropriations to the city council. On September 30, 1980, the

ated in the preceding year for the purposes of said clause (c) by the city council with the approval of the mayor, (iv) the total amount appropriated in the preceding year under, or for the purposes of, said clause (c) remaining unexpended at the end of such year, and (v) the amount which is twice the total expended during the last four months of the preceding year for salary increases effective on September first of such year. Not later than the first Monday of March in each year, said city auditor shall certify to the school committee as the amount available for appropriation by the school committee in such year under clause (c) of section one the amount by which the aggregate of the amounts determined under clauses (ii), (iii), and (v) of this section exceed the aggregate of the amounts determined under clauses (i) and (iv) of this section."

[5] The parties disagree as to what portion of this budget is attributable to special education costs. The city asserts that the budget allocated $34,037,375 for special education services. The plaintiffs contend that budget items attributable to special education, but not labelled as such, bring the special education allocation up to $46,145,272.

[6] The requested appropriations included $15,100,000 designated to fund collective bargaining agreements. In Boston Teachers Local 66 v. Boston, 382 Mass. 553, 558-560 (1981), we held that the mayor was required by G. L. c. 150E, § 7 (b), to submit to the city council that portion of the supplemental requests needed to fund executed collective bargaining agreements.

[7] The school committee requested the additional sums pursuant to St. 1936, c. 224, § 2, as appearing in St. 1949, c. 118, which provides: "Nothing in this section shall prevent the mayor, on request of the school committee, from recommending and the city council from passing additional appropriations for school purposes." See Pirrone v. Boston, 364 Mass. 403 (1973).

[8] In fiscal years 1970 through 1980, the mayor submitted requests for supplemental appropriations to the city council and in each fiscal year the city council voted supplemental appropriations.

school committee by a 3-1-1 vote decided to allocate all of its $195,220,920 charter appropriation to general education. The committee determined that an extra $46,145,272 was needed for special education and instructed the superintendent to demand that the mayor submit a supplemental appropriation in this amount to the city council. The superintendent sent the mayor a letter that day, demanding that the mayor submit a supplemental appropriation of $46,145,272 to the city council and asserting that the school committee was entitled to the appropriation under the provisions of St. 1972, c. 766 (commonly known as "c. 766"). The mayor did not respond in writing to this letter, and on October 10, 1980, the plaintiffs filed the instant action.

3. *Jurisdiction.* The plaintiffs bring this action pursuant to G. L. c. 71, § 34, G. L. c. 71B, § 5, and G. L. c. 231A. Although we hold that the plaintiffs may not maintain this action under G. L. c. 71, § 34, or G. L. c. 71B, § 5, we agree with the trial judge that the parties are entitled to a declaration of the respective rights of the school committee and city officials concerning the funding of special needs programs. We believe that in this case "involving questions of pressing public importance we should indicate our views where a vista of avoidable litigation among administrative officials is disclosed and the issues have been fully argued." *School Comm. of Boston* v. *Board of Educ.,* 352 Mass. 693, 697 (1967), appeal dismissed, 389 U.S. 572 (1968). The case presents an important public question and its resolution will affect many besides the immediate litigants; it also reduces to a matter of statutory interpretation, not dependent on the present facts. *Department of Community Affairs* v. *Massachusetts State College Bldg. Auth.,* 378 Mass. 418, 424 (1979); *Lahey Clinic Foundation, Inc.* v. *Health Facilities Appeals Bd.,* 376 Mass. 359, 371-372 (1978). But see *Litton Business Syss., Inc.* v. *Commissioner of Revenue, ante* 619 (1981) (where plaintiffs' ten-taxpayer action jurisdictionally defective, declaratory relief unavailable absent special circumstances).

4. *G. L. c. 71, § 34.* The plaintiffs purport to bring this action pursuant to G. L. c. 71, § 34,[9] seeking to compel the city to appropriate funds in excess of the amount the school committee is authorized to appropriate directly under St. 1936, c. 224. The defendants allege that the ten-taxpayer remedy provided in G. L. c. 71, § 34, is inapplicable to the city of Boston and that this case is controlled by our decision in *Pirrone* v. *Boston,* 364 Mass. 403 (1973). We agree.

In *Pirrone,* we held that the unique Boston public school financing system set forth in St. 1936, c. 224, is incompatible with the remedy provided by G. L. c. 71, § 34. Our decision was based on a review of the historical development of the special legislation applicable to school financing in Boston and a consideration of the purpose of G. L. c. 71, § 34.

Under St. 1936, c. 224, as amended, the school committee is empowered to appropriate funds for general school purposes up to a certain limit — "essentially, an amount equal to the amount of funds which was required to finance the school system in the preceding year." *Pirrone* v. *Boston, supra* at 409. If the committee requires additional funds, it

[9] As in effect when the plaintiffs filed their complaint, G. L. c. 71, § 34, as amended through St. 1979, c. 194, § 2, provided in relevant part: "Every city and town shall annually provide an amount of money sufficient for the support of the public schools as required by this chapter. Upon petition to the superior court, sitting in equity, against a city or town, brought by ten or more taxable inhabitants thereof, or by the mayor of a city, or by the attorney general, alleging that the amount necessary in such city or town for the support of public schools as aforesaid has not been included in the annual budget appropriations for said year, said court may determine the amount of the deficiency, if any, and may order such city and all its officers whose action is necessary to carry out such order, or such town and its treasurer, selectmen and assessors, to provide a sum of money equal to such deficiency, together with a sum equal to twenty-five per cent thereof." (The above section was most recently amended by St. 1980, c. 580.)

The statute provides a remedy for "taxable inhabitants," not a school committee. *Bell* v. *North Reading,* 363 Mass. 505, 509 (1973). Our discussion of G. L. c. 71, § 34, relates primarily to the claim of the ten taxable inhabitants who are plaintiffs in this case.

must ask the mayor to submit a request for a supplemental appropriation to the city council. *Id.* See *Boston Teachers Local 66* v. *Boston,* 382 Mass. 553, 558-559 (1981); *Boston Teachers Local 66* v. *School Comm. of Boston,* 370 Mass. 455, 472 (1976). However, under St. 1909, c. 486, § 3, the mayor may decline to make such a submission, provided the request is not for an amount needed to fund executed collective bargaining agreements. *Boston Teachers Local 66* v. *School Comm. of Boston, supra* at 472, 474. *Boston Teachers Local 66* v. *Boston, supra* at 558-560.

This scheme gives the Boston school committee less budgetary control than school committees in other cities and towns, which have the authority to determine the financial needs of the public schools.[10] *Amherst-Pelham Regional School Comm.* v. *Department of Educ.,* 376 Mass. 480, 494-495 (1978). *Pirrone* v. *Boston, supra* at 406. Nevertheless, we have determined that it represents a reasoned attempt on the part of the Legislature to balance the responsibilities of the school committee and the city officials responsible for Boston's financial condition. *Id.* at 409-410.

To allow the plaintiffs in the present case to compel appropriation in excess of that authorized by St. 1936, c. 224, would be to negate the Legislature's statutory limit on the Boston school committee's appropriating power. The plaintiffs have no cause of action under G. L. c. 71, § 34, because that section was designed to protect school committee budgetary autonomy in cities and towns other than the city of Boston. *Pirrone* v. *Boston, supra* at 412. *Casey* v. *Everett,* 330 Mass. 220, 222 (1953). Since such school committee autonomy does not exist in Boston, and has not existed since 1898, *Pirrone* v. *Boston, supra* at 411-412, G. L. c. 71, § 34, has no application to the city of Boston. Consequently, the plaintiffs have no remedy available to them under G. L. c. 71, § 34.

---

[10] The method of public school financing will be modified on the effective date of St. 1980, c. 580, § 7.

5. *G. L. c. 71B, § 5.* The plaintiffs also purport to bring this action pursuant to G. L. c. 71B, § 5.[11] Their contention, accepted by the trial judge, is that § 5 requires the city to appropriate funds for special education even where the amount requested exceeds the amount available for direct appropriation under St. 1936, c. 224. The plaintiffs attempt to distinguish our decision in *Pirrone, supra,* by arguing that § 5 imposes on the city a special needs funding obligation which is distinct from the obligation to support public schools in general, and which supersedes the St. 1936, c. 224, limitation on school funding. They contend that § 5 creates its own mechanism by which taxpayers and the school committee can enforce this funding obligation. The plaintiffs further argue that the obligation and scope of G. L. c. 71B, § 5, is distinct from the remedy provided by G. L. c. 71, § 34. Therefore, they reason that *Pirrone,* which dealt only with G. L. c. 71, § 34, does not apply to actions brought under G. L. c. 71B, § 5. We believe this interpretation to be contrary to the legislative purpose of both St. 1936, c. 224, and G. L. c. 71B.

We start with the premise that absent a clear legislative intent to the contrary the provisions of a special charter generally prevail over conflicting provisions of a subsequently enacted general law. *Boston Teachers Local 66* v. *Boston, supra* at 564. *Boston Teachers Local 66* v. *School Comm. of Boston, supra* at 472. *Marshal House, Inc.* v.

---

[11] General Laws c. 71B, § 5, as amended by St. 1973, c. 318, § 1, provides: "Any school committee which provides or arranges for the provision of special education pursuant to the provisions of section three shall pay for such special education personnel, materials and equipment, tuition, room and board, transportation, rent and consultant services as are necessary for the provision of such special education.

"A school committee which incurs costs or obligations under the provisions of this section shall include within its annual budget an amount of money to comply with said provisions. Said amount shall be added to the annual budget appropriation for school purposes in each city or town for the support of public schools for the purposes of, and enforceable pursuant to, section thirty-four of chapter seventy-one, notwithstanding any general or special laws or charter provisions which limit the amount of money that may be appropriated in any city or town for school purposes."

*Rent Control Bd. of Brookline,* 358 Mass. 686, 698 (1971). Local regulations enjoy a presumption of validity, and a sharp conflict between the local and State legislation is required before the local regulation will be held invalid. *Grace* v. *Brookline,* 379 Mass. 43, 53-54 (1979). *Bloom* v. *Worcester,* 363 Mass. 136, 154 (1973). "That sharp conflict appears when either the legislative intent to preclude local action is clear, or, absent plain expression of such intent, the purpose of the statute cannot be achieved in the face of the local by-law." *Grace* v. *Brookline, supra* at 54. See *Keane* v. *City Auditor of Boston,* 380 Mass. 201, 208 (1980). The existence of legislation on a subject does not necessarily preclude local action, as long as the State legislative purpose can be achieved in the face of the local regulation. *Bloom* v. *Worcester, supra* at 156. To the extent possible, local statutes and statutes of general application should be construed together so as to constitute a harmonious whole consistent with the legislative purposes of both. See *Boston Police Patrolmen's Ass'n* v. *Boston,* 367 Mass. 368, 373 (1975). Cf. *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds,* 382 Mass. 580, 585 (1981).

We turn to a consideration whether St. 1936, c. 224, is inconsistent with G. L. c. 71B. As to express intent, it is clear that G. L. c. 71B does not explicitly refer to the financing of the Boston public schools, or to St. 1936, c. 224, nor does it, on its face, exempt Boston from its enforcement provisions.[12] Nevertheless, the plaintiffs contend that the provision in G. L. c. 71B, § 5, which requires school committees to include special education costs in their annual budgets "notwithstanding any general or special laws or charter provisions which limit the amount of money that may be appropriated in any city or town for school purposes" supersedes the appropriation limitation placed on the school committee of Boston. St. 1936, c. 224.

---

[12] We note, in passing, that G. L. c. 71, § 34, also contained no explicit exemption as to Boston. Yet, G. L. c. 71, § 34, was held inapplicable to Boston. *Pirrone* v. *Boston,* 364 Mass. 403 (1973).

We do not believe that the Legislature, in enacting G. L. c. 71B, § 5, intended to repeal the detailed school financing system which has existed in Boston since 1898. See *Pirrone* v. *Boston, supra* at 411-412. We cannot reasonably infer that § 5 removes all restrictions on the Boston school committee's appropriation power with respect to funds allegedly required for c. 766 purposes, or that it requires the mayor and the city council to honor any and all school committee requests for such funds. Rather, we construe the § 5 "notwithstanding" provision as applicable to cities and towns other than Boston, i.e., municipalities which are subject to the requirements of G. L. c. 71, § 34, but which may have conflicting charters or special laws. See, for example, *Casey* v. *Everett, supra* at 222, and cases cited (charter provision of city of Everett did not exempt city from obligation under G. L. c. 71, § 34, to appropriate all funds requested by school committee). Cf. *Amherst-Pelham Regional School Comm.* v. *Department of Educ., supra* at 495 (school committee not limited by municipal finance law in its ability to reimburse parents for special education costs); G. L. c. 44, §§ 30, 31.

We recognize that the legislative intent to supersede local regulations need not be expressly stated where the State law deals with a subject comprehensively and "may reasonably be inferred as intended to preclude the exercise of any local power or function on the same subject because otherwise the legislative purpose of that statute would be frustrated." *Bloom* v. *Worcester, supra* at 155. See *Boston Teachers Local 66* v. *Boston, supra* at 564; *Keane* v. *City Auditor of Boston, supra* at 208. However, the plaintiffs have not shown that enforcement of St. 1936, c. 224, would frustrate the legislative purpose of G. L. c. 71B.[13]

___

[13] The plaintiffs rely on *Boston Teachers Local 66* v. *School Comm. of Boston,* 370 Mass. 455 (1976), which held, inter alia, that under G. L. c. 150E, the mayor is required to submit requests for funding of executed collective bargaining agreements as to school department employees to the city council for appropriation even though the appropriation, if made, would exceed the statutory limit imposed by St. 1936,

General Laws c. 71B, inserted by St. 1972, c. 766, was enacted in order to provide every child residing in the Commonwealth with "an *adequate,* publicly supported education" (emphasis supplied). St. 1972, c. 766, § 1. See *Commonwealth* v. *School Comm. of Springfield,* 382 Mass. 665, 667 (1981); *Board of Educ.* v. *Assessor of Worcester,* 368 Mass. 511, 515 (1975). The statute was designed to remedy past inequities and inadequacies in the provision of special education services and to ensure "a flexible and uniform" system of special education opportunities. St. 1972, c. 766, § 1.

Chapter 766 does not preclude any local action on the subject of special education. Instead, the statute gives local

---

c. 224. The plaintiffs argue that the holding in this case is authority for the proposition that a general statute (G. L. c. 150E) supersedes the limitations imposed by St. 1936, c. 224. See also *Boston Teachers Local 66* v. *Boston,* 382 Mass. 553 (1981), decided after the case at bar was argued. Neither case is wholly apposite: The holding in these cases was that the mayor was required to submit requests for funding of executed collective bargaining agreements to the city council. Neither case required that the appropriation be made. The court held that the mayor was required to submit appropriate requests for funding of executed collective bargaining agreements to the city council by virtue of "a strong legislative intent" revealed by G. L. c. 150E "that the question of appropriating funds to meet the needs of a collective bargaining agreement should be submitted to the municipal body whose action is required to appropriate the necessary funds." *Boston Teachers Local 66,* 370 Mass. at 474. In our later decision we described G. L. c. 150E as a "comprehensive statute, designed to regulate public sector collective bargaining." *Boston Teachers Local 66,* 382 Mass. at 564. We stated further that "[t]he legislative purpose of G. L. c. 150E would be frustrated if the mayor, as a party with no role in the bargaining process, were permitted to veto by a stroke of the pen a collective bargaining appropriation agreed upon by designated bargaining representatives after weeks or months of negotiations." *Id.* at 565. The funding mechanism in the city of Boston presents no such danger to special needs programs. Cf. St. 1936, c. 224, § 2 (quoted note 7, *supra*). More importantly, we discover no legislative intent to supersede St. 1936, c. 224, by the enactment of G. L. c. 71B, § 5, as was applicable to G. L. c. 150E. We note also that neither opinion stands for the proposition that the city, acting through the city council, was required to appropriate additional money to fund the collective bargaining agreement. The plaintiffs argue that G. L. c. 71B, § 5, requires not only the submission by the mayor of their request to the council but mandates a council appropriation as well. The plaintiffs seek to stretch the mandate of the collective bargaining cases too far.

school committees the responsibility of identifying, evaluating and providing programs for school-age children with special needs, G. L. c. 71B, § 3; *Amherst-Pelham Regional School Comm.* v. *Department of Educ., supra* at 487-488, and requires them to allocate funds for special needs programs within their annual budgets, G. L. c. 71B, § 5. The operation of St. 1936, c. 224, simply limits the amount of the Boston school committee's yearly appropriation. This restriction does not frustrate the purpose of c. 766. Indeed, it is clear on this record that the plaintiff school committee has, up to the initiation of this law suit, provided funds for special needs education pursuant to its power of appropriation under St. 1936, c. 224. To hold that St. 1936, c. 224, does not apply to c. 766 expenditures would be to give c. 766 programs a favored financial status in the Boston public school funding scheme. The Legislature intended to equalize educational opportunity when it enacted c. 766, not to grant special education a special status in the school funding scheme.

If sufficient funds are not available to finance all of the special education services considered desirable, the school committee may, as discussed above, ask the mayor to transmit a request for supplemental funds to the city council. However, nothing in c. 766 supports the plaintiffs' contention that the mayor is required to submit, and the council to approve, the request. If the mayor declines to submit the request, the school committee must allocate the existing funds equitably. Cf. *Battle* v. *Pennsylvania,* 629 F.2d 269, 278 (3d Cir. 1980); *Hines* v. *Pitt County Bd. of Educ.,* 497 F. Supp. 403, 408 (E.D.N.C. 1980); *Mills* v. *Board of Educ. of D.C.,* 348 F. Supp. 866, 876 (D.D.C. 1972) (if sufficient funds for special needs programs are unavailable, authorities required under local, State, and Federal statutes to expend existing funds equitably). Generally, school committees have long enjoyed the authority to use funds appropriated for school purposes as they see fit, "even to the extent of diverting sums specifically allocated in the budget from one use to another." *Fitchburg Teachers Ass'n* v. *School Comm.*

*of Fitchburg,* 360 Mass. 105, 108 (1971). *Collins* v. *Boston,* 338 Mass. 704, 708-709 (1959). This is precisely what the Boston school committee has done in the past.[14]

We recognize that the school committee has the difficult task of allocating existing appropriations, a task more difficult in a time when fiscal resources are in short supply and the people have voted to reduce taxes and limit local expenditures in future fiscal years.[15] The problem of limited resources is more properly resolved by the political and legislative process than by resort to the courts. Absent a revision of the historic statutory scheme by the Legislature, the duty of the courts is to preserve the legislatively prescribed "unique balance," *Pirrone* v. *Boston, supra* at 410, of responsibilities between the school committee and the city officials concerning Boston public school financing.

We therefore hold that the city of Boston and its financial officers are not required under G. L. c. 71B, § 5, to provide funding for special needs programs in addition to the funds appropriated under St. 1936, c. 224. The obligation to provide and allocate funding for special needs programs is subject to the limitations on school funding for the city of Boston contained in St. 1936, c. 224.[16]

---

[14] The trial judge found that in years prior to fiscal 1981, the school committee included special education costs within its annual budget. The committee did not attempt to justify supplemental appropriation requests as necessary for special education, nor did it purport to act pursuant to G. L. c. 71B, § 5. In fiscal 1981, it was only after the mayor had declined to submit the request for a multipurpose supplemental appropriation that the committee adjusted its budget and declared that the supplemental funds were required for c. 766 purposes.

[15] In the aftermath of the passage of "Proposition 2 ½" (St. 1980, c. 580), a number of petitions have been filed with the General Court which seek to curtail the special education services and expenditures municipalities are now required to provide. Bulletin of Committee Work for the Committee on Education, No. 4 (April 13, 1981).

[16] Since we hold that the ten-taxpayer remedies contained in G. L. c. 71, § 34, and G. L. c. 71B, § 5, are inapplicable to the city of Boston, we do not address the city's contention that St. 1980, c. 580 has abolished those remedies.

6. *Injunctive relief.* The city asks us to enjoin the school committee from spending in excess of its fiscal 1981 charter appropriation. According to the record before us, the trial judge did not rule on this request, nor did he report the issue.[17] We therefore decline to order such relief.

---

[17] After our rescript, partial summary judgment for the city was entered in the Superior Court. After the entry of the judgment, the city filed two motions for entry of final judgment, permanent injunctive relief, and additional equitable relief, as well as a supporting memorandum. These motions ask the trial court permanently to enjoin the school committee and its agents or representatives from spending or incurring for fiscal 1981 contractual or other financial obligations in excess of the committee's charter appropriation. The motions are, at this stage, properly left to the sound discretion of the trial judge. See *Boston Teachers Local 66* v. *Boston, supra* at 566; *Packaging Indus. Group, Inc.* v. *Cheney,* 380 Mass. 609, 615 (1980).