BOARD OF EDUCATION & others[1] *vs.* CITY OF BOSTON
& others;[2] COMMONWEALTH, third-party defendant.

Suffolk. January 7, 1982. — May 4, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*School and School Committee,* Budget. *Municipal Corporations,* Munic-
ipal finance. *Boston.*

The city of Boston is obligated by G. L. c. 71, §§ 1 and 4, to provide
    funding for a minimum school year of 180 days, even though the
    amount required may exceed the amount appropriated pursuant to
    St. 1936, c. 224; the mayor has the authority and power to enforce the
    limitations of St. 1936, c. 224, on behalf of the city by requiring the
    school committee to expend its funds at a rate which permits the city to
    meet its obligation to provide the minimum school year. [108-112]
In an action seeking declaratory and injunctive relief requiring the city of
    Boston to fund the public schools for a 180-day school year in the 1980-
    1981 school year, it was error to deny the Commonwealth's motion to
    dismiss the city's third-party complaint seeking a declaration that, if
    the court ordered the city to operate the public schools for 180 days,
    despite the exhaustion of the school committee's appropriation, it was
    the constitutional obligation of the Commonwealth to provide the re-
    quired funding. [113]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 24, 1981.

The case was heard by *Morse,* J., on motions for sum-
mary judgment.

[1] The other plaintiff on the complaint is the Commissioner of Educa-
tion. The Citywide Parents Advisory Council, the Boston Home and
School Association, the class of special education students certified in
*Derek Allen & others vs. John J. McDonough & others,* Superior Court,
Suffolk County, No. 14948 (1976), and the Boston Teachers Union, have
intervened as plaintiffs.

[2] The other defendants are the mayor of the city of Boston, the auditor
of the city of Boston, the treasurer of the city of Boston, the city council of
Boston, and the school committee of Boston.

The Supreme Judicial Court granted a request for direct appellate review.

*Stephen H. Oleskey (Richard A. Johnston & Harold J. Carroll,* Corporation Counsel, with him) for the city of Boston & others.

*Anthony P. Sager,* Assistant Attorney General, for Board of Education & others.

*Henry C. Dinger (Loretta M. Smith* with him) for School Committee of Boston.

ABRAMS, J. Once again we are faced with a dispute over the financing of the Boston public school system for the school year 1980-1981. See *School Comm. of Boston* v. *Boston,* 383 Mass. 693 (1981); *Boston Teachers Local 66* v. *Boston,* 382 Mass. 553 (1981). At issue is whether a judge of the Superior Court properly granted the plaintiffs' request for injunctive and declaratory relief requiring the city of Boston to finance the public schools adequately for 180 days (see G. L. c. 71, §§ 1 & 4, and 603 Code Mass. Regs. 27.01 [1978]), notwithstanding the exhaustion of the Boston school committee's appropriation (see St. 1936, c. 224, as amended), "so long as there remain[s] in any account . . . any fund which can be used to fulfill this obligation." For the reasons set forth in this opinion, we believe that the result reached in the Superior Court is correct.

1. *Facts and prior proceedings.* On April 29, 1980, the Boston school committee appropriated $195,220,920 as its St. 1936, c. 224, appropriation for the fiscal year 1981.[3] On or about June 30, 1980, the school committee submitted its preliminary budget of $227,697,844 for the fiscal year 1981 to the city. On August 29, 1980, the school committee requested that the mayor submit to the city council a request

---

[3] By St. 1936, c. 224, the school committee is empowered to make appropriations for school purposes, not to exceed an amount determined by statutory formula. (See *infra* at 109). See *Pirrone* v. *Boston,* 364 Mass. 403, 406 (1973). See also *School Comm. of Boston* v. *Boston,* 383 Mass. 693, 695 n.4 (1981).

for a supplemental appropriation of $40,700,000.[4]  On September 30, 1980, the committee requested the mayor to submit a request for a supplemental appropriation of $46,145,272.  The mayor refused to act upon either request, taking the position that the school committee must operate within its statutory appropriation.[5]

Subsequent to the first request, the mayor commissioned an independent report on the financial status of the schools. The report concluded that, if the school committee continued to spend its funds at the present rate, its expenditures would greatly exceed its statutory appropriation, and that the school year would have to be reduced or additional funds appropriated.  In letters dated November 14, 1980, February 4, 1981, and March 19, 1981, the city auditor informed the school committee that it was spending at a rate in excess of its legal authority.  On March 24, 1981, the Board of Education (board) and the Commissioner of Education filed a complaint in the Superior Court seeking declaratory and injunctive relief requiring the city to fund the public schools for the full 180-day school year for 1980-1981, as required by G. L. c. 71, §§ 1 & 4, and 603 Code Mass. Regs. 27.01 (1978).  See note 8, *infra*.  The city of Boston, the mayor, the treasurer, and the auditor ("the city") filed an answer and counterclaim, and a third-party complaint against the Commonwealth.[6]  In its answer and counter-

---

[4] The school committee requested the additional sums pursuant to St. 1936, c. 224, § 2, as appearing in St. 1949, c. 117, which provides in pertinent part:  "Nothing in this section shall prevent the mayor, on request of the school committee, from recommending and the city council from passing additional appropriations for school purposes."  See *Pirrone* v. *Boston, supra.*

[5] An additional $15.1 million supplemental appropriation to fund collective bargaining agreements was approved after we held in *Boston Teachers Local 66* v. *Boston,* 382 Mass. 553, 558-560 (1981), that the mayor was required by G. L. c. 150E, § 7 (*b*), to submit to the city council that portion of the supplemental requests needed to fund executed collective bargaining agreements.  The supplemental appropriation brought the total amount of funds available to the school committee for fiscal 1981 operations to $210,320,920.

[6] The third-party complaint against the Commonwealth is pending in the Superior Court.  See *infra* at 113.

claim, the city asked the court to declare that the city is not obligated to provide funding for the operation of the public schools in excess of the school committee's statutory appropriation, and that the school committee is required to operate the public schools for 180 days within its statutory appropriation. In its third-party complaint, the city asked the court to declare that, if the court orders the city to operate the public schools for 180 days in the 1980-1981 school year, despite the exhaustion of the school committee's appropriation, it is the obligation of the Commonwealth to provide the required funds. The city later amended its complaint and requested the court to enjoin the Commonwealth from failing to provide all funds necessary for the operation of the Boston public schools beyond $210,320,920. See note 5, *supra*.

On April 28, 1981, the judge made findings on the plaintiffs' motions for summary judgment and partial summary judgment. On April 29, 1981, the judge entered a partial summary judgment declaring that Part II, c. 5, § 2, of the Massachusetts Constitution; G. L. c. 71, §§ 1 & 4; and 603 Code Mass. Regs. 27.01 (1978), require the city to operate the public schools for 180 days in the 1980-1981 school year, notwithstanding the school committee's having fully expended its St. 1936, c. 224, appropriation. The judge restrained the city, the city council, and the school committee from failing to fund the schools for 180 days.

The city's motion for a stay of the order was denied. However, at the Attorney General's request, the judgment was stayed pending the city's motion to a single justice of this court for a stay of the order pending appeal. The city's motion was transferred to the full bench by the single justice. The city also filed an application for direct appellate review of the trial court's declaration and order. All parties assented to the application, and it was allowed by the full court.

Because the record had not been assembled at the time of oral arguments, we limited argument to the issue of the stay of the trial court's order. On May 5, 1981, we issued an

order denying the city's application for a stay and remanding the matter to the trial court for further proceedings.[7]

After our decision in *School Comm. of Boston* v. *Boston,* 383 Mass. 693 (1981), the city filed a motion in the Superior Court for reconsideration of the partial summary judgment, on the basis that the partial summary judgment was inconsistent with our opinion. On June 22, 1981, the judge entered a summary judgment for the plaintiffs declaring that St. 1936, c. 224, does not excuse the city from operating the public schools, so long as there remain in any account any funds which can be used to fulfil the city's obligation. The judge also declared that, if the city does not have sufficient funds, in any account, to meet its obligation, then the obligation to supply necessary funds shifts to the Commonwealth. On July 31, 1981, the judge issued an amended summary judgment and directed that his declaration be entered as a final judgment. He reported the case to the Appeals Court. The judge also reported his denial of the Commonwealth's motion to dismiss the city's amended third-party complaint. We granted the city's application for direct appellate review.

---

[7] The order reads as follows: "This matter came to be heard before the Full Court on the issue of whether a preliminary injunction entered by the Superior Court should be stayed pending appeal. Mass. R. A. P. 6 (a), as amended, [378 Mass. 930 (1979)]. The Superior Court enjoined the City of Boston, Boston School Committee, Mayor, City Council, Auditor and Treasurer, and their officers and agents, from failing to maintain and fund adequately the Boston public schools and those school programs, facilities, and services required by law for at least 180 days in the 1980-1981 school year. In considering a request for a stay of injunctive relief, we look to the same factors properly considered by the judge in the first instance, namely, the parties' claims of irreparable harm and likelihood of success on the merits. *Packaging Indus. Group, Inc.* v. *Cheney,* 380 Mass. 609, 615-616, 617 & n.12 (1980). *Washington Metropolitan Area Transit Comm'n* v. *Holiday Tours, Inc.,* 559 F.2d 841, 844 (D.C. Cir. 1977) (construing Fed. R. A. P. 8, comparable to Mass. R. A. P. 6 [a]). See G. L. c. 231, § 118, par. 2. The city defendants have conceded that the closing of schools will result in irreparable injury. In view of the city's concession a majority of the justices sitting have determined that, on this record, the plaintiffs have shown a sufficient likelihood of success on the merits to warrant denial of the motion for a stay of the injunction. The matter is remanded to the Superior Court for further proceedings."

2. *Obligations imposed by G. L. c. 71, §§ 1 & 4; 603
Code Mass. Regs. 27.01 (1978); and by St. 1936, c. 224.*
General Laws c. 71, §§ 1 & 4, and 603 Code Mass. Regs.
27.01 (1978),[8] require cities and towns to operate the public
schools for a minimum term of 180 days. The requirement
that a city or town operate the public schools for a
minimum term has existed since the year 1789. See, e.g.,
St. 1789, c. 19 (six months in each year); St. 1827, c. 143
(six months each year); St. 1839, c. 56, § 1 (six months each
year); St. 1894, c. 231, § 1 (eight months each year);
St. 1898, c. 496, § 1 (thirty-two weeks in the year). The
Legislature has mandated a minimum school year because a
"general dissemination of knowledge and virtue is necessary
to the prosperity of every State, and the very existence of a
Commonwealth." St. 1789, c. 19, preamble.

It is not disputed that the Legislature can determine the
content and the quantity of public education as a matter of
policy. "The quality of education can be rendered mean-
ingless if the quantity is subject to manipulation." *School
Comm. of Burlington* v. *Burlington Educators Ass'n,* 7
Mass. App. Ct. 41, 46 (1979). The city, however, argues
that in Boston St. 1936, c. 224, is the limit of the city's
obligation in these circumstances. We do not agree. "[T]he
city of Boston is subject to the same duty to support public
schools as is every other Massachusetts city and town." *Pir-
rone* v. *Boston,* 364 Mass. 403, 409 (1973). Statute 1936,
c. 224, "simply limits the amount of the Boston school com-
mittee's yearly appropriation." *School Comm. of Boston* v.
*Boston,* 383 Mass. 693, 704 (1981).

Statute 1936, c. 224, empowers the school committee to
appropriate funds for general school purposes up to a certain

---

[8] The regulation reads in pertinent part as follows: "(1) All school
districts shall schedule a minimum of 180 days per year. The minimum
length of the school year for Grades K-12 commencing in September,
1975, shall be fixed, at the option of the school committee, at either 180
days or for a lesser number of days, as hereinafter set forth. (2) The
minimum length of the school year may be determined on the basis of in-
structional hours, during which both pupils and teachers shall be present
and engaged in regular teaching-learning activities."

limit. "That limit is, essentially, an amount equal to the amount of funds which was required to finance the school system in the preceding year . . . ." *Pirrone* v. *Boston*, *supra*. If the school committee requires additional funds, it must ask the mayor to submit a request to the city council for an additional appropriation, subject to the mayor's absolute veto. St. 1909, c. 486, § 4. The mayor may refuse to submit the request. *Pirrone* v. *Boston*, *supra* at 413. See *School Comm. of Boston* v. *Boston*, 383 Mass. 693, 698-699 (1981). Compare *Boston Teachers Local 66* v. *Boston*, 382 Mass. 553, 560 (1981) (mayor may not refuse to submit request for supplemental appropriation to fund executed collective bargaining agreements).

The manifest design of G. L. c. 71, §§ 1 & 4, indicates a legislative determination that every city and town must provide a minimum number of school days. The policy is Statewide and contains no exceptions. "A statute of that nature displays on its face an intent to supersede local and special laws" in cases of conflict. *McDonald* v. *Superior Court*, 299 Mass. 321, 324 (1938). See *Boston Teachers Local 66* v. *School Comm. of Boston*, 370 Mass. 455, 474 (1976). See also *School Comm. of Boston* v. *Boston*, 383 Mass. 693, 702-703 (1981).

It is undisputed that in school year 1980-1981 the St. 1936, c. 224, appropriation was sufficient to fund the school year for 180 days. The issue, therefore, is who is to bear the responsibility for the school committee's overspending for the 1980-1981 school year. Although it is not free from ambiguity, we conclude that the legislative scheme evinces an intent that in these circumstances the city is responsible for the costs of maintaining the minimum school year even if the school committee exhausts its St. 1936, c. 224, appropriation. Requiring the city to fund the public schools in these circumstances is consistent with the wording and policy of G. L. c. 71, §§ 1 & 4, and with the policy of requiring municipal officials to control municipal expenditures. Finally, basic enforcement powers have been granted to local officials and not to the Commissioner of Education (see note 14, *infra*).

The city charter provides that the mayor can monitor the budget of the school committee and the rate at which it spends its appropriation. The school committee must submit to the mayor "estimates of the proposed expenditures for school purposes not later than the first Monday in February of each fiscal year." St. 1936, c. 224, § 3, as appearing in St. 1945, c. 513.[9] The city auditor must furnish monthly to the "mayor and city council a statement of the unexpended balances of all the departments." St. 1909, c. 486, § 25. In addition, the city auditor must "notify the mayor whenever the expenditures of a department seem to him to be in excess of a proper monthly ratio of its appropriation." City of Boston Code, Ordinances, Title 6, § 1 (1975).[10] In enacting St. 1936, c. 224, the Legislature "has attempted to ensure that the officials who are ultimately responsible for the city's financial condition may exercise some control over the extent to which the city's resources are to be appropriated for school purposes." *Pirrone* v. *Boston,* 364 Mass. 403, 409-410 (1973).

The Boston school committee has limited budgeting discretion. This limitation permits the mayor, as head of the executive branch of city government, to require the school

---

[9] Pursuant to St. 1969, c. 849, §§ 5, 62, & 63, the fiscal year of all counties, cities, and towns shall begin with July first and end with the following June thirtieth. It does not appear that St. 1936, c. 224, has been amended to reflect this change in the fiscal year.

[10] The city was aware, as early as June 30, 1980, when the school committee submitted its budget totalling $227,697,844, that the committee ·might exhaust its St. 1936, c. 224, appropriation before the end of 1980-1981 school year. On July 28, 1980, a more detailed budget for fiscal 1981 was submitted to the city auditor. On November 14, 1980, on February 4, 1981, and again on March 19, 1981, the city auditor notified the president and chairman of the school committee that it was illegally spending in excess of its appropriation. The city continued nevertheless to honor school committee financial requests.

The record does not disclose any effort by the city to secure an order from the judge requiring the school committee to reduce its rate of expenditure after our order of February 12, 1981, declaring that the obligation to fund special needs programs is subject to St. 1936, c. 224. See *School Comm. of Boston* v. *Boston,* 383 Mass. 693, 694, 705 (1981).

committee to stay within the charter appropriation. "These grants of authority and responsibility to the mayor necessarily imply grants of implicit power to carry out the authority expressly conferred." *City Council of Boston* v. *Mayor of Boston*, 383 Mass. 716, 721 (1981). Thus, we believe that the mayor may require the school committee to expend its funds at a rate which permits the city to meet its obligation to provide the minimum school year. See note 10, *supra*.

The city also has authority to enforce the budgetary limitations imposed by St. 1936, c. 224, by virtue of St. 1909, c. 486, § 16. The city has the authority to seek criminal penalties against school committee members who intentionally spend in excess of the committee's appropriation.[11] See *State* v. *Boncelet*, 107 N.J. Super. 444, 451 (1969) ("[I]t [is] not necessary to adduce proofs from which it could be inferred that the [official] intended to profit or otherwise benefit from the overexpenditures. It [is] sufficient if there was an intent to commit the act which the law forbade . . .").[12] The purpose of St. 1909, c. 486, § 16, is to set firm barriers against expenditures in excess of appropriations, and, in general, to put the city on a sound financial basis, so far as possible through legislation. See *Continental Constr. Co.*

---

[11] Statute 1909, c. 486, § 16, provides: "No official of said city, except in case of extreme emergency . . . shall expend intentionally in any fiscal year any sum in excess of the appropriations duly made in accordance with law . . . . Any official who shall violate the provisions of this section shall be punished by imprisonment for not more than one year, or by a fine of not more than one thousand dollars, or both." The problem that developed in this case was foreseeable, and thus not an "'extreme emergency' under the statute." See *Central Tow Co.* v. *Boston*, 371 Mass. 341, 345 & n.11 (1976); *Safford* v. *Lowell*, 255 Mass. 220, 225 (1926).

[12] The school committee, pursuant to the advice of its attorney, expended its funds at a rate which assumed its conclusion that funding for special needs programs under G. L. c. 71B, § 5, was not included in its St. 1936, c. 224, appropriation. Nothing in the record indicates that the school committee will not stay within the budgetary limits of St. 1936, c. 224, now that the issue of funding for special needs programs has been decided. See note 10, *supra*.

v. *Lawrence,* 297 Mass. 513, 515 (1937) (construing similar language in G. L. c. 44, § 31).[13]

The statutory scheme places primary responsibility to fund the public schools for the minimum school year on the city. See St. 1936, c. 224; G. L. c. 71, §§ 1 & 4. The Legislature has provided the city with enforcement powers.[14] Therefore, we conclude that the city is responsible for providing the minimum number of school days. The city may avoid an increase in its obligations beyond St. 1936, c. 224, by diligently monitoring the expenditure rate of the school committee, and by enforcing the provisions of St. 1936, c. 224, and St. 1909, c. 486, § 16. This result is consistent with the mayor's power to monitor the school committee's rate of expenditure and with the legislatively mandated obligation of the city to provide a 180-day school year.[15] See G. L. c. 71, §§ 1 & 4, 603 Code Mass. Regs. 27.01 (1978).

---

[13] Since the city has not argued that the school officials who signed the expenditure orders resulting in overspending are personally liable thereon, we do not discuss that issue.

[14] By contrast, the board of education is limited in its ability to enforce the provisions of St. 1936, c. 224, and G. L. c. 71, §§ 1 & 4. See G. L. c. 15, § 1G, as amended through St. 1980, c. 261, § 1 ("[B]oard shall see to it that all school committees comply with all laws relating to the operation of the public schools and in the event of noncompliance the commissioner of education shall refer all such cases to the attorney general of the commonwealth for appropriate action to obtain compliance"). See also *Pirrone* v. *Boston,* 364 Mass. 403, 408 n.9 (1973); *Quinn* v. *School Comm. of Plymouth,* 332 Mass. 410 (1955); *Pittenger* v. *Union Area School Bd.,* 24 Pa. Commw. Ct. 442 (1976) (mandamus to compel school board to furnish 180 days of instruction). The defendants claim that the Attorney General, on behalf of the board, lacks authority to bring this suit. We believe the board correctly asked the Attorney General to seek compliance with G. L. c. 71, §§ 1 & 4, and that it was appropriate for the Attorney General to seek enforcement against the city as well as the school committee. G. L. c. 231A, § 2.

[15] The board may grant a waiver of the minimum school year for good cause. See G. L. c. 71, §§ 1, 4. Any waiver, however, is for a "limited period." In this case, the closing of schools would have resulted in a school year twenty percent shorter than the legislatively required minimum. There is no indication that the board has the authority to waive a substantial part of the school year.

3. *Denial of the Commonwealth's motion to dismiss third-party complaint.* The judge denied the Common-wealth's motion to dismiss the city's third-party complaint, and reported his ruling. In its complaint, the city asked for a declaration that the Commonwealth has a constitutional duty to provide all funds necessary to operate the public schools for 180 days, in excess of the $210,320,920 already appropriated under St. 1936, c. 224. Since we have con-cluded that G. L. c. 71, §§ 1 & 4, require the city to pro-vide 180 school days, we do not reach any constitutional issues.[16] The judge should have granted the Common-wealth's motion to dismiss the city's third-party complaint.

The judgment is vacated and this case is remanded to the Superior Court where a new judgment is to enter declaring that the city and the school committee were obligated to provide a minimum school year of 180 days for the school year 1980-1981, and that the mayor has the authority and power to enforce the limitations of St. 1936, c. 224, on be-half of the city by requiring the school committee to expend its funds at a rate which permits the city to meet its obliga-tion to provide the minimum school year. See note 10, *supra*. Further, the judgment shall declare that the city was obligated to fund the 1980-1981 school year even though the amount required exceeded the amount the school committee could appropriate pursuant to St. 1936, c. 224.[17] Lastly, the city's third-party complaint against the Commonwealth is to be dismissed.

*So ordered.*

---

[16] The defendants have not shown that it would be impossible to operate the public schools for the statutory minimum term within the school com-mittee's statutory appropriation. See *Cronin* v. *Lindberg*, 66 Ill. 2d 47, 61 (1976). Consequently, we do not reach or decide the question who should fund the public schools in that circumstance.

[17] However, the sums provided by the city in discharging its obligation under G. L. c. 71, §§ 1 & 4, are not to be included in the statutory for-mula for determining the school committee's direct appropriation. See St. 1936, c. 224. The school committee does not argue otherwise.