EDWARD J. DOHERTY & others vs. SCHOOL COMMITTEE
OF BOSTON & another.[1]

Suffolk.    March 1, 1982. — June 29, 1982.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*School and School Committee*, Open meetings. *Public Board. Open Meeting Law. Municipal Corporations*, Open meetings.

Provisions of the open meeting law contained in General Laws c. 39, § 23B (2), which permit executive sessions of a governmental body for the purpose of considering "discipline or dismissal of . . . a public officer, employee, staff member or individual," and which afford certain procedural rights to the individual concerned were inapplicable to a meeting at which a school committee took action to effect massive layoffs of teachers due to budgetary constraints. [645-647]

In light of pending litigation over the funding of the Boston public schools, including an action by the Boston Teachers Union to compel additional appropriations to fund collective bargaining agreements, a meeting of the school committee of Boston in executive session to consider massive layoffs based on budgetary constraints fell within the exemption to the open meeting law provided by G. L. c. 39, § 23B (3), and there was no requirement that the action taken be ratified in an open meeting. [647]

CIVIL ACTION commenced in the Superior Court Department on May 15, 1981.

The case was heard by *Morse*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*James T. Grady* for the plaintiffs.

*Michael J. Betcher (H. Charles Hambelton* with him) for the defendants.

ABRAMS, J.    These cross appeals raise issues of the interpretation of G. L. c. 39, § 23B (2)[2] and 23B

---

[1] The city of Boston has intervened as a party defendant.

[2] General Laws c. 39, § 23B (2), provides that executive sessions may be held "[t]o consider the discipline or dismissal of . . . a public officer, em-

(3),[3] the Commonwealth's open meeting law. The plaintiffs, ten registered voters of the city of Boston who are also members of the Boston Teachers Union, appeal from a judgment in the Superior Court declaring that G. L. c. 39, § 23B (2), is not applicable if a school committee considers teachers' layoffs based on budgetary constraints. The school committee appeals from a ruling that it was required to reconvene in open session to ratify the action taken at a properly held executive session. The judge entered a judgment ordering "[t]he School Committee [to] comply with the requirements of the open meeting law in the future." We conclude that the judge correctly ruled that the school committee was authorized to meet in executive session without sending notice to individual teachers. We also conclude that if a governmental body meets in executive session to take action which may affect its litigation position, there is no requirement that its action be ratified in an open meeting.[4]

We summarize the judge's findings. On or about April 29, 1981, the superintendent of the Boston public schools sent letters to 2,261 tenured teachers informing them that he was recommending they be laid off effective August 31, 1981,

---

ployee, staff member, or individual, provided that the individual involved in such executive session pursuant to this clause has been notified in writing by the governmental body at least forty-eight hours prior to the proposed executive session. . . . A governmental body shall hold an open meeting if the individual involved requests that the meeting be open. If an executive session is held, such individual shall have the following rights: (a) to be present at such executive session during discussions or considerations which involve that individual; (b) to have counsel or a representative of his own choosing present and attending for the purpose of advising said individual and not for the purpose of active participation; (c) to speak in his own behalf."

[3] General Laws c. 39, § 23B (3), provides that an executive session may be held "[t]o discuss strategy with respect to collective bargaining or litigation if an open meeting may have a detrimental effect on the bargaining or litigating position of the governmental body."

[4] Since we have concluded that the school committee was authorized to meet in executive session, we need not decide whether an improperly held executive session may be cured by a subsequent open meeting. See *Attorney Gen.* v. *School Comm. of Taunton*, 7 Mass. App. Ct. 226, 228 n.2 (1979).

and that the school committee would meet on June 25, 1981, to vote on the dismissals. See G. L. c. 71, § 42. The superintendent based his recommendations on declining enrollments and insufficient appropriation. See St. 1936, c. 224; *Board of Educ.* v. *Boston, ante* 103 (1982); *School Comm. of Boston* v. *Boston,* 383 Mass. 693 (1981).

On April 16 and April 21, 1981, the school committee met with its attorneys to discuss the matter of dismissal notices based on budgetary constraints. The president of the Boston Teachers Union was present at the April 21, 1981, meeting. The school committee informed her "of the impossibility of operating the school system at a $210 million budget without terminating teachers, . . . and that anticipatory notices would have to be sent to teachers who may be affected."

On May 15, 1981, the plaintiffs filed a complaint in the Superior Court under G. L. c. 39, § 23B, seeking to invalidate "a purported vote of the . . . School Committee, which apparently was taken in executive session, contrary to law." On May 21, 1981, the school committee voted in open session to ratify the action taken earlier in its executive session.

In their complaint the plaintiffs asserted that the school committee failed to comply with the open meeting requirement of G. L. c. 39, § 23B. Further, the plaintiffs argued that, even if the school committee had met in executive session properly, the presiding officer failed to cite in open session the true purpose of the executive session, and the school committee failed to notify in writing any of the employees or teachers whose dismissals were considered at the meeting, at least forty-eight hours prior to the proposed executive session. See G. L. c. 39, § 23B (2).

The judge determined that the "plain purpose of the meetings was to set the stage for a challenge to the legal validity of the job security clause" of the collective bargaining agreement, see generally *Boston Teachers Local 66* v. *School Comm. of Boston, ante* 197 (1982), and that "[n]either executive session involved discipline, complaints, charges or any other misconduct leading to dismissal of the

teachers for cause other than the probable lack of a sufficient appropriation." The judge, therefore, concluded that individual teachers were not entitled to notice and an opportunity to be heard under G. L. c. 39, § 23B (2).

General Laws c. 39, § 23B, manifests a general policy that all meetings of a governmental body should be open to the public unless exempted by the statute. "The open meeting law is designed to eliminate much of the secrecy surrounding the deliberations and decisions on which public policy is based." *Ghiglione* v. *School Comm. of Southbridge,* 376 Mass. 70, 72 (1978). However, the statute recognizes that there are occasions when "[p]ublic officials . . . might be unduly hampered in the performance of their duties if all gatherings of members of included governmental bodies must be open to the public." *Id.* at 72-73.

The plaintiffs agree that disciplinary matters concerning public employees need not be considered in an open meeting. They argue, however, that when the school committee meets in executive session to consider the "dismissal" of tenured teachers, based on the lack of funds, the school committee is required to give the affected teachers an opportunity to be heard individually. See note 2, *supra.* The failure of the school committee to do so, the plaintiffs claim, requires the action taken in executive session be declared invalid.

The statute exempts disciplinary action against public employees from the open meeting law to "protect the individual's reputation and the interest of the public in maintaining efficient personnel management and employee morale." Note, Open Meeting Statutes: The Press Fights for the "Right to Know," 75 Harv. L. Rev. 1199, 1208 (1962). See also *Puglisi* v. *School Comm. of Whitman,* 11 Mass. App. Ct. 142, 143-144 (1981). Those considerations, however, are not applicable when a school committee considers the massive elimination of teaching positions solely because of budgetary constraints. Such dismissals do not involve any particular individual nor are they concerned with the misconduct or discipline of any individual teacher. See *School Comm. of Foxborough* v. *Koski,* 8 Mass. App. Ct. 870, 871

(1979). Thus, G. L. c. 39, § 23B (2), is inapplicable to massive layoffs of public employees based on the financial inability of the public employer to pay its personnel.

Further, we believe that the notice and hearing requirement of G. L. c. 39, § 23B (2), are analogous to the notice and hearing requirements of G. L. c. 71, § 42. As we read these two statutes neither one requires the school committee to provide individual hearings for teachers who have been laid off solely for budgetary reasons. See *Boston Teachers Local 66* v. *School Comm. of Boston, supra* at 214-216.[5]

In its cross appeal the school committee argues that it is authorized to meet in executive session "[t]o discuss strategy with respect to . . . litigation," and that the judge erred by requiring it to reconvene in open session. The plaintiffs concede that "the matters discussed at the two executive sessions certainly implicated par. (3) of § 23B." The judge ruled that § 23B (3) did not eliminate the need for an open meeting subsequent to the executive session because "[t]here is no showing that there would have been 'a detrimental effect on the bargaining or litigating position' if the School Committee had reconvened in open session to vote to authorize the sending of the notice letters."[6] The judge expressly found that "[t]he plain purpose of the meetings was to set the stage for a challenge to the legal validity of the job security clause." See *Boston Teachers Local 66* v. *School Comm. of Boston, supra.* By its express terms G. L. c. 39, § 23B (3), does not require the school committee to reconvene in an open meeting if, at the time it goes into executive session, the matter to be discussed concerns litigation strategy and an open meeting might have an adverse impact on the committee's litigation position. See *Attorney Gen.* v. *School Comm. of Tauton*, 7 Mass. App. Ct. 226, 231 (1979).

---

[5] The plaintiffs do not argue on appeal that the reasons proffered by the school committee are a sham or a subterfuge. See *Boston Teachers Local 66* v. *School Comm. of Boston, supra* at 216.

[6] The plaintiffs have not briefed this issue on appeal. The plaintiffs limited their argument to the applicability of G. L. c. 39, § 23B (2).

At the time of the meetings in question the school committee and the Boston Teachers Union were involved in extensive litigation. A complaint by the Boston Teachers Union against the city of Boston to compel additional appropriations to fund collective bargaining agreements was being litigated. See *Boston Teachers Local 66* v. *Boston,* 382 Mass. 553 (1981). The board of education had filed a complaint against the city of Boston and the school committee to compel the city and school committee to provide 180 days of public education. *Board of Educ.* v. *Boston, supra.* In light of this pending litigation over the funding of the Boston public schools, the school committee could properly anticipate a challenge by the Boston Teachers Union to layoffs based on the limited funds available to the school committee. See St. 1936, c. 224; *Board of Educ.* v. *Boston, supra.* Thus, the school committee's meeting falls within the exemption provided by G. L. c. 39, § 23B (3).

The case is remanded to the Superior Court where a judgment is to enter declaring that the school committee's decision to meet in executive session falls within the exemption of G. L. c. 39, § 23B (3), and that G. L. c. 39, § 23B (2), does not apply to massive layoffs based on the financial inability of the school committee to continue to pay its personnel.

*So ordered.*